## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**ANTHONY BOYD,**

    **Plaintiff,**

**v.**

**JOHN Q. HAMM, Commissioner,**
**Alabama Department of Corrections, in his official**      **Case No. 2:25-cv-00529-ECM-JTA**
**capacity,**

                                       **CAPITAL CASE**

**TERRY RAYBON, Warden,**
**Holman Correctional Facility, in his official capacity,**

**ALABAMA DEPARTMENT OF CORRECTIONS,**
**an Administrative Department of the State of**
**Alabama, and**

**STEVEN MARSHALL, Attorney General,**
**State of Alabama, in his official capacity,**

    **Defendants.**

### ANTHONY BOYD'S OPPOSITION TO DEFENDANTS'
### MOTION TO DISMISS

### INTRODUCTION

On July 16, 2025, in response to the filing of *State of Alabama's Motion to Set an*

*Execution*, Mr. Boyd filed the present action, under 28 U.S.C. § 1983, alleging that Alabama's

nitrogen hypoxia protocol (the "Protocol") violates the Eighth Amendment's prohibition against

cruel and unusual punishment and the Fourteenth Amendment's due process protections.  On

July 18, 2025, Mr. Boyd filed his Motion for Preliminary Injunction seeking to enjoin the

Defendants from executing him using the Protocol during the pendency of this litigation.  (ECF#

11).  On August 8, 2025, Defendants filed *Defendants' Combined Motion to Dismiss and*

*Response to Motion for Preliminary Injunction* (ECF# 29).[1]  Despite Defendants' conclusory assertions, Mr. Boyd alleged sufficient facts to support a method of execution challenge. Specifically, Mr. Boyd has sufficiently pled that the State's Nitrogen Hypoxia Protocol ("Protocol") violates the Eighth Amendment – both on its face and as applied to Mr. Boyd – as well as alternative methods of execution (firing squad, hanging, and Medical Aid In Dying). As described in further detail below, Defendants' motion should be denied. [2]

## ARGUMENT

### I.    The Legal Standard For a Motion to Dismiss

"A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Wilson v. Hamm*, No. 2:24-cv-111-ECM, 2025 WL 794447, at *1 (March 12, 2025) citing FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff."  *Mitchell v. Headley*, No. 2:18-CV-769-ECM, 2019 WL

---

[1] For clarity Mr. Boyd separately addresses Defendants' response to the motion for preliminary injunction and motion to dismiss.  To the extent Mr. Boyd included something in his reply that Defendants intended to be a basis for dismissal in their Motion to Dismiss, Mr. Boyd incorporates herein the corresponding portion of his reply on that point.

[2] On August 15, 2025, the parties filed a Stipulation (A) Concerning Proper Defendants For Complete Relief To Be Effectuated and (B) Of Dismissal Without Prejudice As To Defendants Alabama Department of Corrections and Steve Marshall (ECF No. 32), accordingly Defendants' Motion to Dismiss as to those two Defendants is moot.

3323733, at \*1 (M.D. Ala. July 24, 2019) (Marks, J.) citing *Landau v. RoundPoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1369 (11th Cir. June 11, 2019). *See also Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The standard, however, "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556. at 678 (citation omitted). Applying these standards to Mr. Boyd's Complaint, Defendants' motion to dismiss should be denied.

II.    **Mr. Boyd's Complaint Alleges Cruel And Unusual Punishment**

"The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is 'substantial when compared to a known and available alternative.'" *Bucklew v. Precythe*, 587 U.S. 119, 134 (2019) (citations omitted). The Supreme Court has held that depriving a conscious person of oxygen creates a "constitutionally unacceptable risk of suffocation." *Baze v. Kees,* 553 U.S. 35, 53 (2008).

"To decide whether the State has cruelly 'superadded' pain to the punishment of death isn't something that can be accomplished by examining the State's proposed method in a vacuum, but only by 'compar[ing]' that method with a viable alternative." *Bucklew v. Precythe*, 587 U.S. 119, 136, (2019) quoting *Glossip*, 135 S.Ct., at 2737–2738. The Supreme Court in *Bucklew* explained "when it comes to determining whether a punishment is unconstitutionally cruel because of the pain involved, the law has always asked whether the punishment 'superadds' pain well beyond what's needed to effectuate a death sentence. And answering that question has

always involved a comparison with available alternatives, not some abstract exercise in 'categorical' classification." *Bucklew*, 587 U.S. at 136-37.

At the motion to dismiss stage, Mr. Boyd has more than alleged sufficient facts to proceed with an Eighth Amendment method of execution challenge. A death-sentenced prisoner challenging a method of execution must show the method creates a "demonstrated risk of severe pain" that is "substantial when compared to the known and available alternatives." *Baze v. Rees*, 555 U.S. 35, 61 (2008).

The Eighth Amendment guarantees every person the right to be free from cruel and unusual punishment. Based on the mounting evidence that the Protocol causes inmates to experience conscious suffocation, in violation of the Eighth Amendment, Mr. Boyd filed a complaint requesting declaratory and injunctive relief. Specifically, Mr. Boyd seeks declaratory relief that (i) on its face, the Protocol violates the Eighth Amendment because the administration of pure nitrogen gas causes the prisoner to experience the extreme pain and terror of suffocation while still conscious, inflicting gratuitous suffering beyond what is constitutionally permitted; (ii) Defendant's failure to provide Mr. Boyd with a copy of the unredacted Protocol and permit him to sufficiently oppose the Protocol violates the Fourteenth Amendment's right to Due Process; and (iii) as applied to Mr. Boyd, the Protocol violates the Eighth Amendment due to Mr. Boyd's heightened health risks from his asthma and vertigo. Based on the various violations of the Eighth and Fourteenth Amendments, Mr. Boyd seeks injunctive relief enjoining Defendants from setting an execution date or from executing him using the present Protocol.

As the basis for these claims, Mr. Boyd alleges that:

- Each of the previous five inmates executed under the Protocol – Kenneth Smith, Alan Miller, Carey Grayson, Demetrius Terrance, and Gregory Hunt – all demonstrated signs of conscious suffocation, terror, and pain in violation of the Eighth Amendment. *Complaint* ("*Compl.")*, ¶¶ 34-35.

- 4 -

- Prior to the execution of Kenneth Eugene Smith, the Defendants represented to this Court that the Protocol would "cause unconsciousness within seconds" after the flow of nitrogen began. *Compl.*, ¶ 51.

- Multiple eyewitness reports from each execution establish that the inmates did not lose consciousness within seconds, but rather suffered for several minutes prior to losing consciousness. *Compl.*, ¶¶ 54-64; 71-75; 80-84; 88-92; 96-97; 102-105.

- Mounting evidence from the previous executions show that all of the individuals executed by nitrogen hypoxia were conscious and struggling for 2-6 minutes following administration of nitrogen. *Compl.*, ¶ 36.

- Defendants maintain that the execution of Mr. Smith was "textbook" and the subsequent nitrogen executions went "as expected." *Compl.*, ¶ 38.

- Mr. Boyd's Complaint, however, alleges that regardless of whether an execution was performed "as expected" it would still cause him to be deprived of oxygen while conscious and that this superadded pain and terror is in itself a violation of the Eighth Amendment. *Compl.* ¶ 45.

- Mr. Boyd is at greater risk of experiencing a constricted airway due to his asthma. Specifically, the increased stress and anxiety will trigger his asthma which may cause Mr. Boyd to vomit, convulse, experience an inability to breathe, and/or otherwise suffer extra added psychological pain. *Compl.,* ¶ 109.

- Mr. Boyd's vertigo further creates a risk that his upper airways will become obstructed. *Compl.*, ¶ 110.

First-hand accounts from witnesses present at each of the previous executions, provide ample factual support for Mr. Boyd's position. These witnesses have all similarly reported clear signs of conscious distress, including violent jerking, writhing, and convulsing movements. For example:

- Kenneth Eugene Smith was described looking like "a fish out of water…" *Compl.*, ¶ 60. Another explained that Mr. Smith "appeared to be having convulsions or seizures. His eyes rolled up. His legs moved violently up and down several times. His head thrust forward and back to the gurney several times. He clenched his fists and his arms and body strained against the gurney restraints." *Compl.*, ¶ 62.

- Media witnesses from various local and national media outlets similarly described Mr. Smith exhibiting signs of struggle. *Compl.*, ¶¶ 63-64.

- As described by those present at Mr. Miller's execution, Mr. Miller "shook and trembled" and that he "struggled against the restraints on the gurney" for several minutes, showing signs of conscious suffocation. *Compl.*, ¶¶ 72-75.

- Such visual observations have been consistently reported in the executions of Carey Dale Grayson (*Compl.*, ¶¶ 80-84), Demetrius Terrance Frazier (*Compl.*, ¶¶ 88-92), Jessie Hoffman (*Compl.*, ¶¶ 96-98) and Gregory Hunt (*Compl.*, ¶¶ 101-105), including but not limited to the following examples:

- "Grayson rocked his head, shook and pulled against the gurney restraints… clenched his fist and appeared to struggle to try to gesture again. His sheet-wrapped legs lifted off the gurney into the air… took a periodic series of more than a dozen gasping breaths for several minutes." *Compl.,* ¶ 82.

- "Frazier moved his outstretched palms in a swirling circular movement for the first minute or two… He appeared to grimace, quiver on the gurney and take a gasping breath. A minute later, he raised both legs several inches off the gurney and then lowered them." *Compl.*, ¶ 89.

- At Mr. Hoffman's nitrogen execution in Louisiana, "His chest rose and he made a jerking motion. A minute later, Hoffman's body shook and his fingers twitched. He appeared to pull at the arms of the table… His head stayed turned to his right. His breathing slowed… his head was tilted back, teeth exposed in a grimace." *Compl*., ¶ 97.

- "Hunt began taking deep breaths… He began gasping and lifted his head. His entire body began convulsing. Hunt turned his head and then lifted his head. Hunt's head fell back, and he groaned loudly… Hunt moved his head and gasped. He continued intermittently gasping for the next several minutes." *Compl*, ¶ 104.

Eyewitnesses consistently stated that the executions have not occurred within seconds as attested to by the Defendants. Rather, the inmates all appeared to be conscious and suffering for several minutes following the release of the nitrogen gas. *Compl.*, ¶¶ 34-36. *See also Compl.*, ¶¶ 134-136; 156- 160.

In sum, the Complaint alleges that the growing evidence from each successive nitrogen execution establishes that the Protocol unavoidably causes conscious suffocation. *Compl.*, ¶ 37. Indeed, the Complaint details how the use of nitrogen has been banned as a method of euthanasia in dogs and other animals given observed distress to the animals. *Compl.*, ¶ 47. Furthermore,

the Complaint alleges that the State's continued insistence that the Protocol is working as expected, despite ample and ever-growing evidence to the contrary, demonstrates the State's deliberate indifference to the cruelty inherent in the Protocol.  *Compl.*, ¶¶ 40-41.

"In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff."  *Mitchell*, 2019 WL 3323733, at *1.  The Complaint sufficiently alleges that the Protocol causes conscious suffocation in violation of the Eighth Amendment. The State's motion to dismiss should be denied.

### III.    Mr. Boyd Has Sufficiently Alleged Available Alternatives

Mr. Boyd has sufficiently "identif[ied] a known and available alternative method of execution that entails a lesser risk of pain."  *Glossip v. Gross*, 135 S. Ct. 2726, 2731 (2015).  As detailed below, Mr. Boyd has alleged three known and readily available alternative methods, each of which are "feasible," "readily implemented" and "reduce[] a substantial risk of severe pain."  *Nance v. Ward*, No. 21-439 (U.S. June 23, 2022).[3]

### a.    Firing Squad

Mr. Boyd's first proposed alternative *firing squad* "is both known and readily available." *Compl.*, ¶115.  As the Complaint alleges, presently, the firing squad is available as a method of execution in Utah and Oklahoma.  *Id.*  The firing squad protocols currently in use by other states

---

[3] Mr. Boyd need not offer a proposed alternative that is currently authorized by the State's death-penalty statute. *See Nance v. Ward*, No. 21-439 (U.S. June 23, 2022) ("A prisoner who challenges a State's proposed method of execution under the Eight Amendment must identify a readily available alternative method that would significantly reduce the risk of severe pain. If the prisoner proposes a metho already authorized under state law, the Court has held that his claim can go forward under 42 U.S.C §2983m rather than in habeas. But the prisoner is not confined to proposing a method already authorized under state law; he may ask for a method used in other states.") (internal citation omitted).

where it is an authorized method of execution are known and readily available to Alabama. *Compl.*, ¶¶ 115-116.

The firing squad entails a lesser risk of causing superadded pain in violation of the Eighth Amendment. Unlike the Protocol, which has been observed to take several minutes to cause death, the firing squad causes and instantaneous and certain death. As alleged in the Complaint "[t]he firing squad causes death with minimal pain and suffering as the execution would cut off circulation to brain, resulting in rapid and profound cessation of cognitive brain activity in a time frame of no more than 3-4 seconds. *Compl.*, ¶117.

The firing squad is also feasible as other states already have their own protocols in place, which Alabama could adapt as the basis for itself protocol. *Compl.*, ¶116. For example, the Utah protocol contemplates five trained shooters, four of whose guns are loaded and the fifth loaded with a non-lethal wax bullet. *Id.* Defendants have the supplies and means necessary to conduct an execution by means of firing squad. *Cf. Glossip*, 135 S.Ct. at 2738. (plaintiffs failed to satisfy their burden to identify a "known and available method of execution" where the record showed that Oklahoma had been unable to obtain the drugs necessary for the plaintiffs' proposed alternative single-drug execution protocol "despite a good-faith effort to do so."). Accordingly, firing squad is a sufficient alternative method of execution.

**b.    *Hanging***

Mr. Boyd's second proposed alternative, *hanging*, is a known and readily available method of execution, which is presently permitted in states such as Delaware, New Hampshire and Washington. *Compl.*, ¶118. As with the firing squad, hanging entrails a lesser risk of causing superadded pain as if conducted properly would cause instantaneous loss of consciousness. Moreover, hanging would alleviate the additional harm raised by Mr. Boyd's

medical conditions.  In addition, Defendants could adopt the protocol presently employed by one of the other states which utilizes hanging.  Finally, there is no argument that such a method is unfeasible as "there are no impediments to obtaining the required materials." *Compl*., ¶118. Accordingly, hanging is a sufficient alternative method of execution.

### *c.    Medical-Aid-In-Dying*

Mr. Boyd's third proposed method, *medical-aid-in-dying ("MAID")*, is a known and readily available method of execution, which is currently legal in Oregon, Washington, California, Hawaii, Colorado, Vermont, Maine, New Jersey, Montana, Washington DC, and New Mexico.  *Compl*., ¶ 121.  Execution using MAID would eliminate the risk of conscious suffocation.  The method utilizes a drug combination of digoxin, diazepam, morphine, amitriptyline, and phenobarbital (DDMAPh) which when properly administered causes death in a reliable and painless manner.  *Compl*., ¶ 122.  Mr. Boyd cites to ample support that MAID would reduce the risk of suffocation.  The studies on MAID show that the median time to complete loss of consciousness is 5.8 minutes, however, the loss of awareness occurs much sooner.  "DDMPAh has been 100% effective at causing death."  *Compl*., ¶ 124. MAID is readily available and feasible because the drugs which are utilized are widely available and a protocol could be adopted using the medical studies and methods available.  Accordingly, MAID is a sufficient alternative method of execution.

## IV.    The Court Should Permit Amendment in the Alternative

"Rule 15 of the Federal Rules of Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so requires." *Johnson v. Charter Commc'ns, Inc.*, No. 5:20-CV-2056-LCB, 2022 WL 14338413, at *1 (N.D. Ala. Oct. 24, 2022).  Should the Court be inclined to grant Defendants' motion to dismiss, Mr. Boyd requests that he be permitted to

amend his complaint to address any potential deficiencies. Given that Mr. Boyd's life is at stake, justice requires that he be permitted to amend his complaint if necessary.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss.

ANTHONY BOYD,

By his attorneys,

*/s/ Matthew C. Moschella*
Matthew C. Moschella
(Admitted *Pro Hac Vice*)
John C. La Liberte
(Admitted *Pro Hac Vice*)
David A. Michel
(Admitted *Pro Hac Vice*)
SHERIN AND LODGEN LLP
One Lincoln Street, 14th Floor
Boston, Massachusetts 02111
mcmoschella@sherin.com
jclaliberte@sherin.com
damichel@sherin.com
Dated: August 18, 2025                    (617) 646-2000

## CERTIFICATE OF SERVICE

Mr. Boyd's opposition was filed, via the CM/ECF system, on August 18, 2025, which will cause all counsel of record to receive an electronic copy.

Dated: August 18, 2025                    /s/ Matthew C. Moschella
                                          Matthew C. Moschella

4932-6577-6224.v4