NOT FOR PUBLICATION

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 25-13545
_____

ANTHONY BOYD,

        *Plaintiff-Appellant,*

versus

COMMISSIONER, ALABAMA DEPARTMENT OF
CORRECTIONS,
HOLMAN CF WARDEN,

        *Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:25-cv-00529-ECM
_____

Before Jordan, Lagoa, and Abudu, Circuit Judges.

PER CURIAM:

Anthony Todd Boyd, an Alabama prisoner, is scheduled to be executed on Thursday, October 23, 2025. He filed a method-of-execution lawsuit under 42 U.S.C. § 1983, challenging Alabama's nitrogen hypoxia protocol under the Eighth Amendment. He also sought a preliminary injunction prohibiting his execution by nitrogen hypoxia. Following an evidentiary hearing, the district court denied the motion for a preliminary injunction.

Mr. Boyd now seeks a stay of execution. For the reasons which follow, we deny the motion for a stay.[1]

## I

"We may grant a stay of execution only if the prisoner 'establishes that (1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest.' To obtain a stay, the prisoner 'must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits.'" *Barwick v. Governor*, 66 F. 4th 896, 900 (11th Cir. 2023) (citations omitted).

---

[1] Mr. Boyd was convicted and sentenced to death for his participation (along with others) in the kidnapping and murder of Gregory Huguley. The underlying facts are set out in *Boyd v. State*, 715 So.2d 825, 832 (Ala. Crim. App. 1997), and *Boyd v. Warden*, 856 F.3d 853, 859 (11th Cir. 2017).

Case 2:25-cv-00529-ECM     Document 109     Filed 10/20/25     Page 3 of 13
USCA11 Case: 25-13545     Document: 18-1     Date Filed: 10/20/2025     Page: 3 of 12

25-13545                    Order of the Court                    3

The district court's denial of a preliminary injunction is reviewed for abuse of discretion. *See Robinson v. Attorney Gen.*, 957 F.3d 1171, 1177 (11th Cir. 2020). The court's factual findings are subject to clear error review. That means that a finding "that is 'plausible' in light of the full record—even if another is equally or more so—must govern." *Cooper v. Harris*, 581 U.S. 285, 293 (2017) (citation omitted).

## II

Nitrogen hypoxia, as set out in Alabama's protocol, "causes death by introducing 'pure nitrogen gas . . . to the condemned inmate through an industrial-use respirator mask until the inmate is declared dead. The protocol also calls for the use of EKG and pulse oximeter devices to monitor the . . . inmate's condition until declared dead' but 'does not call for the use of a sedative in advance of the initiation of nitrogen gas.'" *Grayson v. Commissioner*, 121 F. 4th 894, 896–97 (11th Cir. 2024).

Mr. Boyd alleged in his complaint that certain aspects of Alabama's nitrogen hypoxia protocol violate the Eighth Amendment. He claimed, for example, that the protocol creates an unnecessary risk of superadded pain through conscious suffocation, which creates severe psychological and physiological distress. As an alternative to nitrogen hypoxia, Mr. Boyd proposed two other methods of execution: (1) death by firing squad, or (2) medical aid in dying ("MAID"). *See* Appellant's Brief at 13.

### A

The Supreme Court has explained that

> [t]he Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions." To the contrary, the Constitution affords a 'measure of deference to a State's choice of execution procedures' and does not authorize courts to serve as "boards of inquiry charged with determining 'best practices' for executions." The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is "substantial when compared to a known and available alternative."

*Bucklew v. Precythe*, 587 U.S. 119, 134 (2019) (citations omitted). "[I]dentifying an available alternative is 'a requirement of *all* Eighth Amendment method-of-execution claims' alleging cruel pain." *Id.* at 136 (citation omitted).

We have similarly said that "[p]risoners cannot succeed on a method-of-execution claim unless they can establish that the method challenged presents a risk that is *sure or very likely* to cause serious illness and needless suffering, and gives rise to sufficiently *imminent* dangers." *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1325–26 (11th Cir. 2019) (internal quotation marks and citations omitted). "[They] must also identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain. Where a prisoner claims a safer alternative to the State's . . . protocol, he cannot make a successful

25-13545                    Order of the Court                    5

challenge by showing a slightly or marginally safer alternative." *Id.* at 1326.

The first question for us is whether the district court "abused its discretion in concluding that [Mr. Boyd] has [not] shown a 'substantial likelihood of success' on the merits of [his Eighth Amendment] claim." *LSSi Data Corp. v. Comcast Phone LLC*, 696 F.3d 1114, 1120 (11th Cir. 2012). *See, e.g.*, *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) ("The district court did not abuse its discretion in determining that BellSouth had established a substantial likelihood of success."); *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (reviewing district court's "substantial likelihood of success" determination for abuse of discretion). In answering that question, we do not decide the ultimate merits of Mr. Boyd's claim. *See, e.g.*, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) ("In these circumstances, and in the light of existing case law, we cannot conclude that the district court erred by granting preliminary injunctive relief. This is the extent of our appellate inquiry, and we 'intimate no view as to the ultimate merit of [respondent's] contentions.'") (citation omitted); *Di Giorgio v. Causey*, 488 F.2d 527, 528–29 (5th Cir. 1973) ("[O]n appeal from a preliminary injunction this Court does not concern itself with the merits of the controversy . . . No attention is paid to the merits of the controversy beyond that necessary to determine the presence or absence of an abuse of discretion.")

Mr. Boyd asserted that Alabama's nitrogen hypoxia protocol forces inmates to suffer from "conscious suffocation." According

to Mr. Boyd, under the protocol it can take anywhere from two to seven minutes before an inmate is rendered unconscious. *See Anthony Boyd v. Comm'r, Ala. Dep't of Corr.*, No. 2:25-CV-529-ECM, 2025 WL 2884410, at *14 (M.D. Ala. Oct. 9, 2025). During that time, he says, the inmate is consciously aware of his slow suffocation, which causes "extreme discomfort and near terror." *Id*. at *7.

To support these assertions at the evidentiary hearing on his motion for a preliminary injunction, Mr. Boyd provided details from five nitrogen hypoxia executions in Alabama where inmates exhibited signs of distress and struggle. *See id*. at *10–12. Mr. Boyd also presented testimony from his expert, Dr. Philip Bickler, who is an anesthesiologist and Director of the Hypoxia Research Laboratory at University of California, San Francisco. Dr. Bickler testified that hypoxia causes "air hunger" that is a "profoundly distressing sensation." Appellant's Brief at 15; *Boyd*, 2025 WL 2884410, at *7. And that unconsciousness does not set in for several minutes. *See Boyd*, 2025 WL 2884410, at *7.

Mr. Boyd argued that a firing squad (under Utah's protocol) would lead to nearly instantaneous loss of consciousness and would therefore be far less painful. *See id*. at *19. In the alternative, he maintained that Alabama could feasibly and readily use MAID, which would similarly significantly reduce the risk of pain. *See* Appellant's Brief at 19; *Boyd*, 2025 WL 2884410, at *1.

## B

As noted, the district court denied the motion for a preliminary injunction. In part, the court concluded that Mr. Boyd did not

Case 2:25-cv-00529-ECM   Document 109   Filed 10/20/25   Page 7 of 13
USCA11 Case: 25-13545   Document: 18-1   Date Filed: 10/20/2025   Page: 7 of 12

25-13545                    Order of the Court                          7

establish a "substantial likelihood of success on his Eighth Amendment method of execution claim because he has not identified an alternative method of execution that would both significantly reduce a substantial risk of severe pain and that is feasible and readily implemented." *Boyd*, 2025 WL 2884410, at *14. In arriving at its decision, the court examined and credited the testimony of Mr. Boyd's expert, Dr. Bickler, that a person undergoing nitrogen hypoxia when breathing normally may take up to two minutes before falling unconscious, and that the experience is both psychologically and physiologically distressing. *See id.* at *8. Dr. Bickler described the experience as "emotional terror" that includes extreme shortness of breath akin to an asthma attack, increased heart rate, and pounding blood in the head. The court, however, determined that this level of discomfort did not constitute a constitutional violation because the Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions." *Id.* at *18. (quoting *Bucklew*, 587 U.S. at 134).

Dr. Joseph Antognini, Alabama's expert on anesthesia, opined that the protocol renders inmates unconscious within 35 to 40 seconds, or sooner, if the inmate inhales 90 to 100 percent nitrogen gas. *See id.* at *7. Dr. Antognini also explained that some of the inmate movements that Mr. Boyd pointed to from prior executions as signs of distress were "involuntary, unconscious responses to the erratic firing of neurons resulting from hypoxia." *Id.* at *13. Indeed, both sides agreed that an unconscious person may exhibit such movements as part of the dying process and that they may not necessarily indicate pain. *See id.*

Case 2:25-cv-00529-ECM   Document 109   Filed 10/20/25   Page 8 of 13
USCA11 Case: 25-13545   Document: 18-1   Date Filed: 10/20/2025   Page: 8 of 12

8                           Order of the Court                      25-13545

The "key question" that the district court focused on was "how long a person will experience emotional terror and psychological distress when he is executed under the Protocol." *Id.* at *17. In answering that question, the court assumed without deciding that Dr. Bickler's baseline of two minutes was the one to be considered. *See id.* at *18.

Although the district court found that Alabama's nitrogen hypoxia protocol would cause physiological and psychological distress, it determined that the protocol would not cause the physical pain that one of Mr. Boyd's proposed alternatives—a firing squad—would. *See id.* at *16. The distinction between the two experiences was explained by the court as the difference between being cut with a knife and the feeling one gets when being threatened with a knife. *See id.* at *7, 15. In the first, one is physically hurt by the wound. In the second, one is psychologically harmed and feels the discomfort that accompanies fear and panic. *See id.*

> It is undisputed that the Protocol does not pose a risk of physical pain akin to being cut with a knife. (Doc. 83 at 200:13–23). Instead, Boyd claims that the Protocol, by depriving inmates of oxygen while they are conscious, causes "emotional terror," physiological distress, and physical discomfort because inmates are unable to get sufficient oxygen into their lungs when their bodies are desperate to do so, and because they must participate in their own deaths by breathing in nitrogen.

*Id.* at *15.

Dr. James Williams, Mr. Boyd's expert in ballistics, emergency medicine, and firearms, described an execution by firing squad at the evidentiary hearing. The inmate is first fitted with a target over his heart and a hood is placed over his head. Five riflemen then take aim and fire at the inmate's heart. When the bullets hit the inmate, they tear the heart muscle to pieces and blow apart the tissue, which causes a rapid and total disruption of blood flow to the brain, and when that blood supply is stopped, loss of consciousness follows. *See id.* at *19. Before falling unconscious, the inmate feels the physical pain of the bullets' impact. *See id.*

The district court credited Dr. Williams' opinion in determining that

> Utah's firing squad protocol would provide a quick death with minimal pain and suffering. (Doc. 82-19 at 7, 12). But [Dr. Williams'] report [also] supports the inference that the inmate *would* experience physical pain during the three to five seconds before he became unconscious. (*See id.* at 7 (explaining that the inmate would become unconscious in three to five seconds and would not feel pain and suffering "thereafter")).

*Id.*

The district court noted that feelings of extreme anxiety and psychological and emotional pain are often an inevitable and expected part of any execution because the ultimate result for the inmate is death. *See id.* at *20. The court determined that nitrogen hypoxia induces fear and stress, but the firing squad subjects the

Case 2:25-cv-00529-ECM   Document 109   Filed 10/20/25   Page 10 of 13
USCA11 Case: 25-13545   Document: 18-1   Date Filed: 10/20/2025   Page: 10 of 12

10                        Order of the Court                     25-13545

inmate to intense, albeit brief, physical pain. *See id.* at *21. The firing squad would very likely carry both intense physical pain as well as the psychological and emotional harm to the inmate, while nitrogen hypoxia carries psychological and emotional discomfort without the intense physical pain of bullets breaching flesh. *See id.* at *21. As a result, the court concluded that Mr. Boyd failed to establish that a firing squad would significantly reduce a substantial risk of severe pain resulting from Alabama's nitrogen hypoxia protocol.

The district court also determined that MAID was not "a feasible, readily implemented alternative" because of administrability issues. The court found that MAID would require additional medical staff and personnel to assist who would not or could not be available to assist in an execution. *See id.* at* 23. Finally, the court noted that there was a valid penological reason not to opt for this method because it would require extended monitoring of the inmate for hours after administration to confirm the inmate's passing. *See id.*

### C

In our view, Mr. Boyd has not made a substantial showing that he is likely to succeed on his Eighth Amendment challenge to Alabama's nitrogen hypoxia protocol. The district court correctly applied the governing law, and we do not think it committed clear error in making its factual findings or otherwise abused its discretion.

Case 2:25-cv-00529-ECM   Document 109   Filed 10/20/25   Page 11 of 13
USCA11 Case: 25-13545   Document: 18-1   Date Filed: 10/20/2025   Page: 11 of 12

25-13545                Order of the Court                    11

In reaching this conclusion we need not and do not address the district court's factual determinations about whether nitrogen hypoxia causes only discomfort and mental distress or actual physical pain (and if so to what precise degree). Assuming that execution by nitrogen hypoxia contains a physical harm component that induces distress, the court did not err in ruling that Mr. Boyd's proposed alternative of a firing squad would not significantly reduce a substantial risk of severe pain. Mr. Boyd's own expert, Dr. Williams, testified that when the four bullets strike the heart, they tear the heart muscles to pieces and blow apart the tissue. *See Boyd*, 2025 WL 2884410, at *19. Moreover, the inmate would not lose consciousness for three to six seconds, during which time he or she would "feel pain and suffering." *Id.* On this record, we cannot say that the district court abused its discretion in concluding that execution by firing squad would not significantly reduce a substantial risk of severe pain. *Cf. Hoffman v. Westcott*, 131 F.4th 332, 336 (5th Cir.) ("Moreover, experts for both parties agreed that death by firing squad can cause pain—and would therefore necessarily be more painful than execution by nitrogen hypoxia."), *cert. dismissed*, 145 S. Ct. 1951 (2025).

The district court also did not err or abuse its discretion in rejecting the MAID alternative proposed by Mr. Boyd. First, the cocktail of drugs needed for MAID can be difficult to obtain and finding the necessary personnel to administer them would be problematic. *See Boyd*, 2025 WL 2884410, at *23. Those findings are not clearly erroneous. Second, Alabama provided a legitimate penological reason for not opting for MAID in lieu of nitrogen hypoxia

Case 2:25-cv-00529-ECM   Document 109   Filed 10/20/25   Page 12 of 13
USCA11 Case: 25-13545   Document: 18-1   Date Filed: 10/20/2025   Page: 12 of 12

12                          Order of the Court                  25-13545

because it is untested—no other state has authorized this method of execution—and would require additional extended monitoring of the inmate following its application. *See id.* Given that "[a] state may refuse to adopt a prisoner's proposed alternative method of execution for a legitimate penological reason," *Nance v. Commissioner*, 59 F. 4th 1159, 1155–56 (11th Cir. 2023), we discern no error here either.

### III

Mr. Boyd's motion for a stay of execution is therefore denied.[2]

---

[2] Having failed to prevail on the first preliminary injunction prong, we decline to reach any of the other issues. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005).

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 20, 2025

Matthew C. Moschella
Sherin and Lodgen LLP
1 LINCOLN ST FL 14
BOSTON, MA 02111

Lauren Ashley Simpson
Office of The Attorney General - Alabama
501 WASHINGTON AVE
PO BOX 300152
MONTGOMERY, AL 36130

Appeal Number: 25-13545-P
Case Style: Anthony Boyd v. Commissioner, Alabama Department of Corrections, et al
District Court Docket No: 2:25-cv-00529-ECM

The enclosed order has been ENTERED.

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Clerk's Office Phone Numbers
General Information:   404-335-6100      Attorney Admissions:            404-335-6122
Case Administration:   404-335-6135      Capital Cases:                  404-335-6200
CM/ECF Help Desk:      404-335-6125      Cases Set for Oral Argument:    404-335-6141

MOT-2 Notice of Court Action